# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 4:16CR332 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| v. | ) | |
| | ) | |
| DERRICK GRANT , | ) | OPINION AND ORDER |
| | ) | |
| Defendant. | ) | |

**CHRISTOPHER A. BOYKO , J:**

This case came before the Court for Competency Hearing on August 21, 2017. Expert testimony was provided regarding the Defendant's competency and the hearing was concluded.

## I. FACTUAL AND PROCEDURAL HISTORY

Derrick Grant ("Defendant") was charged with Assault on a Person Assisting Federal Officers in violation of Title 18, United States Code, Section 111(a)(1). On October 26, 2016, Defendant was arraigned on the stated charge and entered a plea of not guilty. A final pretrial was scheduled for December 13, 2016, and trial was set to proceed on December 20, 2016. On November 28, 2016, on Defendant's motion, the final pretrial was rescheduled for December 14, 2016. On December 6, 2016, the Court sua sponte rescheduled the trial to begin on December 19, 2016.

On December 16, 2016, counsel for Defendant filed an unopposed motion to determine Defendant's present mental condition. Defense counsel stated in his motion that examination is necessary to determine whether Defendant is presently suffering from mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings, aid his counsel in preparation for trial, or understand whether he is in need of the care and custody of a suitable facility. Defense counsel supported his motion by referencing Defendant having exhibited "bizarre, peculiar, and threatening behavior," and an inability to focus during trial preparation. Defense counsel also stated that Defendant would become preoccupied with religion and engage in discussion about an eight headed dragon and the devil. Defense counsel further noted that Defendant's behavior would become very aggressive and agitated toward counsel, with his voice becoming more pressured and louder. Defense counsel unsuccessfully made attempts to bring Defendant back to trial preparation. Defense counsel concluded his motion by asking that Defendant receive a psychological evaluation to determine his competency to stand trial. On December 16, 2016, the Court granted Defense counsel's motion and referred Defendant to the Bureau of Prisons pursuant to 18 U.S.C. § 4241, for mental competency and psychological evaluation and report.

Defendant was referred to Dr. Tenille Warren-Phillips, a forensic psychologist working at FDC Houston, Texas. Defendant arrived at FDC, Houston on January 4, 2017, and was evaluated until February 7, 2017. Dr. Warren-Phillips produced a written report ("the Report") on February 23, 2017. In both her Report and testimony, Dr. Warren-Phillips concluded that Defendant suffers from Antisocial Personality Disorder; Schizophrenia, Multiple Episodes, Currently in Acute Episode; and Cannabis Use Disorder, In Sustained Remission, In a Controlled

Environment. At the hearing, Dr. Warren-Phillips further addressed Defendant's paranoid and grandiose delusions and untreated history of schizophrenia.

The Report details Defendant's past mental health events as follows: September 2009, Defendant was seen for paranoid thoughts and was diagnosed with Depressive Disorder, Not Otherwise Specified, and Cannabis Abuse; June 2011, Defendant was admitted to a hospital, whose records noted a history of chronic paranoid schizophrenia and treatment noncompliance and diagnosed with Psychosis, Not Otherwise Specified; from February 2015-March 2015, Defendant was involuntarily psychiatrically hospitalized following threats to his family (he was extremely disorganized and paranoid and treated with an antipsychotic medication); April 2015, Defendant was involuntarily committed and diagnosed with Schizophrenia, Chronic, Paranoid Type and Antisocial Traits (he was admitted to a psychiatric unit and during treatment admitted to visual hallucinations during periods of incarceration); at an unknown date Defendant was also treated at Mercy Behavioral Health while presenting "severe schizophrenic tendencies."

The Report and testimony of Dr. Warren-Phillips further detailed Defendant's grandiose and religious based delusions. According to Dr. Warren-Phillips, Defendant's delusions are the belief that he is the "Beast" referenced in the Bible's book of Revelations, and that when people get the mark of the Beast, it is the mark of the Defendant. Defendant further believes that the number 666 is calculated by his name and that he has been given Satanic power which allows others to hear him when he is speaking. Defendant also refers to himself as the Antichrist and that he first realized that he is Beast because spirits follow him. He further claims that he is able to communicate with his counsel through celestial spirits via Satan.

At the competency hearing, Dr. Warren-Phillips testified that Defendant displayed a sufficient factual understanding of the legal proceedings against him. She also testified that

Defendant exhibited a sufficient factual understanding of the roles of the judge, jury, witnesses, prosecutor and defense counsel. According to Dr. Warren-Phillips, Defendant has a sufficient factual understanding of the charge against him and the severity of this charge, but has deficits in his rational understanding of the proceedings against him.

However, she also addressed the Defendant's inability to communicate with his counsel and aid in his own defense as a result of his mental deficiencies and diagnosed disorders. Dr. Warren-Phillips provided testimony concerning Defendant's disruptive behavior and lack of cooperation, both of which stem from mental deficiency or defect. Dr. Warren-Phillips described Defendant being subject to unpredictable agitation. According to Dr. Warren-Phillips, this behavior is related to Defendant being grossly disorganized in thought and having abnormal behavior consistent with a diagnosis of Schizophrenia. She notes in her Report that this impairment related to Schizophrenia would interfere with Defendant's ability to work and develop relationships with others, reportedly influenced his relationship with his counsel.

Specifically, Dr. Warren-Phillips stated that Defendant's delusional thinking clouds his ability to rationally evaluate his defense strategy, make reasonable decisions and produces illogical expectations of the outcome of trial. She further addressed Defendant's delusions regarding his counsel's ability to hear Defendant's thoughts and the likelihood of this unrealistic belief interfering with Defendant's ability to communicate and strategize orally with his counsel. She also stated that Defendant suffered auditory hallucinations from a voice that provided guidance to Defendant and which he described as "really big." Dr. Warren-Phillips testified that Defendant's spontaneous digression into his grandiose delusional belief coupled with his losing focus, causes him to become rapidly agitated and potentially dangerous, thereby inhibiting him from engaging in reasonable and logical communication with his counsel.

She also addressed the possibility of Defendant engaging in malingering or feigning mental defect. She testified that Defendant's behavior was consistent in her presence and when Defendant was by himself or interacting with correctional staff. Defendant did not conform to rules, was observed talking about being a King in the Old Testament, the Antichrist, and the Beast of the Revelations. He was also observed by staff engaging in conversations with himself, as if asking questions and providing answers. Dr. Warren-Phillips also stated that malingering involves feigning or exaggerating symptoms for the pursuit of secondary gain. In criminal court, a malingering defendant is typically attempting to avoid consequences for his actions or trial. Here, Defendant wants to go to trial and actually threated adverse consequences would come to Dr. Warren-Phillips if she interfered with him going to trial. She stated that she was certain that Defendant was not malingering.

On April 3, 2017, Defendant's counsel filed a motion to withdraw as Defendant's counsel. Attached to defense counsel's motion was a handwritten letter from Defendant to defense counsel. The letter in effect expressed Defendant's desire for new counsel. On April 5, 2017, the Court granted defense counsel's motion. That same day new counsel was appointed, who conducted the Competency Hearing on behalf of Defendant.

## II. **DISCUSSION**

In order to be found incompetent to stand trial a criminal defendant must lack either a 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' or 'a rational as well as factual understanding of the proceedings against him.'" United States v. Miller, 531 F.3d 340, 350 (6th Cir. 2008) (quoting Drope v. Missouri, 420 U.S. 162, 172 (1975)). Relevant consideration factors concerning a defendant's competency include 'evidence of a defendant's irrational behavior, the defendant's demeanor [in court], and any prior

5

medical opinion on competence to stand trial.'" Id. at 348 (quoting Drope, 420 U.S. at 180 (internal brackets omitted)).

Here Defendant has exhibited an inability to consult with his initial counsel and later with his newly appointed counsel with a reasonable degree of rational understanding. There are three reasons that support the Court's finding of incompetency to stand trial and they all stem from Defendant's diagnosis of historically untreated diagnosis of Schizophrenia. First, Defendant's grandiose beliefs grounded in religion has led to Defendant believing that he is the Antichrist and the Beast described in the Bible's book of Revelations. This belief gives rise to Defendant believing that he can communicate with his counsel telepathically. Defendant believing that he is somehow transmitting information to his defense counsel gives substantial cause for concern about his ability, more so than willingness, to audibly communicate with his counsel. Furthermore, these delusions lead Defendant to believe that he hears voices or receives guidance from a voice that he describes as "really big." This "voice" has the potential to interfere with Defendant's ability to communicate with his counsel, offer testimony at trial, or remain grounded in reality during the course of legal proceedings, including trial.

Secondly, Defendant's delusions and grossly disorganized behavior makes it extremely difficult for his counsel to reasonably communicate with Defendant. During the course of the competency hearing Defendant became argumentative, disrespectful and even threatening to his newly appointed counsel.[1] This behavior is the same behavior that lead to the breakdown in communication with his initial counsel of record, ultimately leading to a motion to withdraw

---

[1] At the conclusion of the competency hearing, Defendant became irate and disruptive. He refused to silence himself and against the advice of his counsel continued to talk over the Court. After a private discussion with his counsel, Defendant began shouting and using expletives towards his counsel. Defendant had to be removed from the courtroom by courtroom deputies.

from representation. Defendant's spontaneous and irrational behavior at the end of the competency hearing exemplified the exact behavior and concerns of Dr. Warren-Phillips. It is clear to the Court that Defendant's mental deficiency inhibits Defendant from reasonably aiding in his own defense.

Finally, the Defendant's history of institutional commitment, both voluntarily and involuntarily, to mental health institutions support the diagnosis and conclusion reached by Dr. Warren-Phillips. Defendant has a rather long history of behavior influenced by Schizophrenia that has gone untreated, albeit largely because Defendant fails to take medication.

The Court agrees with the testimony of the expert, Dr. Warren-Phillips that Defendant does not seem to be malingering or feigning mental defects in order to avoid trial or escape the responsibilities for the action that lead to the charging of the offense before this Court. In fact Defendant is adamant and determined to proceed to trial. The Court finds that, if possible, Defendant must be restored to competency prior to proceeding to trial.

### III. CONCLUSION

The Court finds by a preponderance of the evidence that the Defendant lacks the ability to assist in his own defense and therefore, the Defendant should be committed to the custody of the Attorney General until such time that Defendant is competent to proceed to trial.

The Court therefore commits the Defendant to the custody of the Attorney General, pursuant to 18 U.S.C. §4241(d). The Attorney General shall hospitalize the Defendant for treatment in a suitable facility—

(1) for a reasonable period of time, not to exceed 120 days as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward; and

(2) for an additional reasonable period of time until his mental condition is so improved that trial may proceed, if the Court finds that there is a substantial probability that with such additional period of time he will attain the capacity to permit the proceedings to go forward.

**IT IS SO ORDERED.**

                                                          s/ Christopher A. Boyko
                                                         **CHRISTOPHER A. BOYKO**
                                                         **United States District Judge**

**Dated: August 24, 2017**